You may proceed. May it please the court, Mike Osgood for Appellant Officer Miguel Guerrero, I'd like to reserve two minutes for rebuttal. Within one minute of Officer Guerrero summoning an ambulance for Robert Shirar, the officer yelled, don't do it, and then fired several times. Officer Guerrero is entitled to qualified immunity because the only reason he fired was self-protection. He explained this to the other officers at the scene. Neither plaintiffs or the district court have ever identified any ulterior motive for the shooting, let alone what evidence supports that ulterior motive. And so do you think this is a Cruz case where we have to look at circumstantial evidence? Your Honor, I think that the Cruz framework applies, as in the court should carefully look at the record to see if there is inconsistencies. But what the Ninth Circuit said in the Gonzales case was when there's significant inconsistencies, and like in Cruz, those consistencies are on material matters, i.e. what are the key facts justifying the use of force. Right, and those are much more extreme fact patterns, it seems to me. But we're there, right? We're in a place where we don't have any survivor, and we have to look at the circumstantial evidence, right? Yes and no, Your Honor. I mean, I think the court is supposed to carefully look at the record. But Mr. Shire did survive at least long enough to get testimony. He survived, I think, 30 minutes, and we didn't get any evidence there, to Judge Kennelly's point. I mean, right, there's the utterances that the firefighters thought they heard, and heard them a little differently, but that's about it, right? Well, and it's also what, yes, there's that, and he didn't say, Mr. Shire didn't say, once the other officers were there, that guy shot me for no reason. But yes, he did not give any testimony, but he also never leveled any accusation. And then his own conduct was continuing to reach for the pocket, and then fighting with the paramedics. So there's a dispute about exactly what he told the paramedics, so that's off the table. But his conduct is not disputed. Counsel, what about the inconsistency between Officer Johnson's interview and his deposition testimony? If I remember the record correctly, at one point, he says that he heard the decedent say, shoot me in the head, or shoot me, or something. And in the other place, he said he didn't say anything after he got up to the embankment. Yes, Your Honor, that's an inconsistency, and so that's off the table. I'm not arguing that. What I'm struggling with is, why isn't that a material fact as to whether or not this was suicide by cop, or, I hesitate to use the term, a trigger-happy officer? Because even if Officer Johnson had never heard that, we still have Officer Guerrero's testimony, combined with the corroborating evidence, combined with a lack of inconsistencies on the key facts justifying the use of force. Could I just focus on that? Because I agree with Judge Tallman. That is a serious issue that we need to poke at and delve into. So just to break it down a little bit, I think that there isn't an inconsistency about what Officer Johnson said about what he heard before the shooting, right? He was consistent in saying, I could hear Officer Guerrero saying, don't do it, don't shoot, and that he could hear but couldn't understand what the decedent said. Is that right? That's correct, Your Honor. Okay. So the inconsistency comes from what Officer Johnson said he heard and could understand from the decedent after the shooting. Yes? Yes. Okay. And it seems to me that as to those utterances, we have several witnesses in the form of EMTs who heard what the decedent had to say after the shooting. Is that right? Yes. I think three of the EMTs heard. They're not entirely consistent, as I understand it. I think they say that the decedent either said, I'm dying, or may have said, just let me die. That's correct, Your Honor. And Officer Johnson said, what did he think he heard? I think my memory is he, at his deposition, said that Mr. Shire said, shoot me in the head. But he had not said that in his interview. He had said, I didn't understand. No, no, no, no, no. This is important, and this goes to Judge Tallman's point. I think what he said on the day of the incident, I'm going to give you a chance to respond so you can check your notes. But I think on the day of the incident, Johnson said that he didn't hear anything after the shooting. He could not hear the decedent say anything, and that at his deposition, many months later, made the very different statement that he recalled hearing the decedent say, shoot me in the head. That's a pretty big discrepancy. So if I've got those notes wrong, you'll have a chance to check yours and let me know. I think that point, though, is it's not material because the question is still whether Officer Guerrero is still entitled to qualified immunity, even if nothing has ever been said by Mr. Shire after the shooting. So we still have to go look at what is the plaintiff's version of events. One, we don't ever actually get one provided to us that is a violation of clearly established law and supported by the record. So they have pointed out that some of the corroborating evidence that Officer Guerrero has offered can be cut down. So the pile of corroborating evidence isn't as big as it used to be. But what they need to oppose some re-judgment is their version of events, that they've clearly stated what happened, and then is there evidence that supports that version of events. And then this court can look and see if that's a violation of clearly established law. That's what's missing here. So even if we take away from the corroborating pile, we still need to contradict Officer Guerrero's testimony and then the corroborating evidence, whatever is left. Does that support it? Yes, it does. The question is, is there something on the other side? And that's what the district court fundamentally erred in this case. There are facts that, had they been true, would be material. But just because they're not true or there's a dispute about them doesn't make them material if Officer Guerrero is still entitled to qualified immunity under the remaining evidence. I agree with you that the use of deadly force would be appropriate if the incident occurred exactly as Officer Guerrero says it occurred. But our precedent says that we have to look at the physical evidence, what the other witnesses said, and determine whether or not there are material facts that the jury has to resolve. Because if the jury could find contrary to what Officer Guerrero said, that Mr. Sherrard didn't make any furtive moves, didn't go for the bulge in his pocket, then deadly force would not be appropriate. And the problem is, on this record, it's really difficult to say one way or the other, and the evidence could go either way, depending on how the fact finder resolves these inconsistencies. I would disagree, Your Honor, because the problem is the inconsistencies aren't about anything Mr. Sherrard said, or he was reaching for his pocket. Well, they don't need to be. But can we run through them so you can answer Judge Tallman's question? The first inconsistency they point to, this might not be in the right order, but one of them is the lighting conditions. Guerrero and Johnson were inconsistent about the lighting conditions. Does that matter? I don't think so, Your Honor, because one is, there's always going to be some inconsistencies in witnesses' perceptions and memories. In fact, jurors are told, don't disbelieve a witness. Counsel, your time is ticking, so does it matter? No, Your Honor. Why not? Because Officer Guerrero testified that he was using his flashlight, and the detective at the scene went out later the next day to look at the lighting, or maybe it was two days later, and he confirmed that it was in fact dark. This is just Officer Johnson's memory is slightly off, but he's not the one who observed the actual. Well, we know what time sunrise was, that's objectively verifiable, and we know that these men were standing around for quite a period of time after, so it certainly got light. Yes, Your Honor. Well, but he's on a plateau of an embankment under the overpass, right? So even if morning light was coming, we don't know whether or not the area was lighted. It might have been, it might not have been, it might still have been in the shadows at that hour of the day. Well, I think ultimately that could be true, Your Honor. If it's really true, it's very likely, right? So it's not an inconsistency, it seems to me, that undermines the officer's testimony. His testimony is he was using a flashlight. That's right, Your Honor. Okay. I mean, I don't think we're missing anything on that point. No, Your Honor. Okay, so what about the inconsistency about the number of shots fired and or whether the decedent had gunpowder residue? I don't think it was gunpowder residue, Your Honor. Oh, that he put his hand up, I'm sorry. It was defensive wounds, yes. The wound, right. What the coroner actually testified is there were seven bullet wounds, so it was five to seven shots, and what she testified was is it was consistent with the hand being in front of the chest, and then she was asked, is that consistent with a defensive wound? Yes, it's consistent, but she would never testify that it was likely or probable because there's no way she could. But to Judge Tallman's point, I want you to have a chance to respond to the other side. What they're saying is that that's inconsistent. Putting your hand up defensively is inconsistent with asking to be shot. So what's your response to that? I don't think it is inconsistent because asking to be shot is an intention in your mind. Just having your hands have to be somewhere. He's lying on his side. But both hands were. His left hand's not under him. It's very clear. Both hands were out. Right. There's no wounds to his left hand, which is alleged to be in his pocket. There's no wounds near his left pocket area, so it's not like there's a hole in his pocket and none in his hand. So that's why there's no inconsistency with the hand. The wounds, it's his right hand. Well, but again, the argument is that the inconsistency is that he asked to be shot or may have asked to be shot and then put his hand up sort of defensively. So why is that not an inconsistency is the question. I think it's not an inconsistency because it's not actually probable. The coroner didn't say it was probable it was a defensive wound. She just said it was possible. What she said is it's consistent with his hand. That's what they always say. You've tried cases like this before. That's what they always say. The medical examiner never says anything more than it's consistent with this or consistent with that. So you can't draw anything sort of minimizing that out of the fact that that's the language that the person used. That's right, Your Honor. But I don't think you can also draw the conclusion that it was probably a self-defense wound. Well, it could have been involuntary, right, even if he wanted to be shot. I mean, who knows what a human being would do under those circumstances. And it was several shots. And he's high on what was it? Well, he had meth in his system, Your Honor. Right. Whether he was actually intoxicated at the time, I think that's not. So you don't have a toxicology report? Do you have an expert who says based on these levels of methamphetamine in the system? Yes, Your Honor. It was his consumed meth in the last three to two days, 72 to 48 hours. So I don't think we're saying he was intoxicated. He had meth in his system. Oh, but nobody said that he was intoxicated at the time or likely was at the time. That's not in my memory. Okay. All right. Was it just meth? Or what about the prescription OxyContin? Well, so his problem with that was he was actually in severe opiate withdrawal. So that was more of the absence of it from his system that was causing him the issues over the last couple days. Okay. Thank you for that. All right. And then there's another inconsistency that the opposing counsel is going to argue about the distance. That Johnson described Officer Guerrero's distance quite differently than Officer Guerrero described it. Yes, Your Honor. And what I'd say is Officer Perez also remembered it being about six feet, which corroborates Officer Guerrero. 30 or 60 feet, that's a perception problem. And it's not material because even if it was 30 feet, and the issue was Officer Guerrero had no cover immediately available. So 30 feet is the range of a pistol. You're losing me. Officer Perez wasn't there yet. I'm talking about – so maybe I didn't ask a good question. I'm talking about the distance when Officer Johnson heard the shouting. Guerrero and Johnson were looking for this individual who was missing from the truck, right? And when Officer Johnson described hearing the shouting and running to the scene, he describes Officer Guerrero being much farther away. He does, Your Honor. He thought he was 30 feet away, but then I think he later explained he thought they were 30 feet away the whole time. So it's not like he said he saw Officer Guerrero moving. It's just his perception of the distance as he's remembering it in his deposition is off. But that would have an impact. Depending upon the distance, it would have an impact on Officer Guerrero's ability to see what he says he saw, right, given the light conditions and so on. I mean, the point being that, okay, yeah, maybe there's a perception problem and he's misperceiving the distance. That's a nice argument to make to a jury, but in terms of the evidence that's in the record, there's this difference. Well, that's the problem. I don't think there is actually evidence in the record that 30 feet makes a difference in what the officer could see. So there's been no evidence that at 30 feet using a flashlight. If it's dark and you have to use a flashlight, the difference between 6 feet and 30 feet doesn't make a difference in terms of what you can see? Well, there's no evidence that Officer Guerrero's flashlight isn't effective at 30 feet to be able to see a person lying on his side, otherwise completely visible in the flashlight light. You know, at greater distance, the flashlight beam... Was there any evidence about what the flashlight could do and couldn't do? No, Your Honor. What I would say is they did ask the officer what kind of flashlight he used, and they could have examined it, tested it out, put in some evidence, but they didn't. So I see my time is almost up.  Yes, Your Honor. Thank you. Good morning, Your Honors. My name is Jeff Trachtenberg. I'm counsel for the plaintiffs. I would just like to first address the issue of the drug use because there was some incorrect information there. The evidence is that there was no objective signs of impairment. That is, Miguel Guerrero's testimony is deposition. The evidence was that there was a tiny amount of meth that is residual. It is therapeutic levels of .03 milligrams per liter. It indicates use within 48 to 72 hours, and that's in the record as well in the CHP's interview with the toxicologist. Counsel, what's the most important inconsistency? The most... From your client's perspective. The most... I'm not sure I can... I will answer that, but I don't know that I can quantify it because there are two key facts. There are the fact that he allegedly reached, and then there's the fact that he allegedly threatened. And so you have to look at... How are those inconsistent? No, no, no. There are two key facts that they need to show. My question... I know the law. My question is, you're relying on inconsistencies in the physical evidence, I think, and that circumstantial evidence. I'm just asking you, which ones should we be looking at and deem them material, please? The autopsy is certainly one of the most important things. The autopsy shows that there was potentially self-defense wounds. The autopsy shows that there are... Hold on, hold on. The self-defense wound, meaning the hand? Yes, ma'am. Anything else? The autopsy also shows that the shooting occurred in a way that Miguel Guerrero, Officer Guerrero, described... It's inconsistent with what Officer Guerrero described. Officer Guerrero describes a gentleman laying prone on his right side with his legs straight. The trajectories of those bullets show that it's more likely than not he was not that way, that it was probably that he was in a fetal position as he was observed by Officer Perez, who immediately followed up and came to the scene, saw him with his hands underneath him, not flailing. But I thought the testimony was he was lying on the ground when the officer approached on his side. Which officer are we talking about? Guerrero. Guerrero claims that he was lying on the ground, prone, straight out, with his legs straight out, and his hands somewhere at his upper torso. Your point is that the trajectory evidence suggests that's not right. We know from the autopsy that five bullets, excuse me, of the seven bullet wounds, one of the bullet wounds was a trajectory of 6 o'clock, because we used the head as 12 o'clock. All the others came from 11 o'clock. We know that from the autopsy. So why is that material, counsel? Because that tells you that it's inconsistent with where Guerrero says he was, which is at 9 o'clock. Right. We know about inconsistencies, but your burden is to show that we need to talk about whether they're material inconsistencies, because it's always the case that witnesses remember things a little bit differently. So can you help me with the materiality? It's material because it shows that this didn't happen the way Guerrero said it happened. And if it didn't happen the way Guerrero said it happened, then it undermines his entire account of the event. That's your conclusion, but I really need you to help me out. And this is your opportunity, please. So if you could just bear with me. I see that you're impatient, but could you... I'm not impatient. I'd be happy to hear it. He could be off by a foot. Guerrero could be standing one foot differently than where he thought he was standing in terms of the trajectory, because it wasn't very far away. So why is that material? Because it's material because if Robert is curled up in a ball, being blinded by a flashlight, bleeding from his head, covered in blood, it's material because he didn't reach into his pocket. It's material because it shows he didn't threaten. That's after he was shot. We're trying to focus on what the officer reasonably perceived at the time he decided to fire. And it seems to me that you're quarreling on a point that could easily be explained by the fact that the officer was moving, although there wasn't any cover, he could have been moving to the side in order to protect himself if he believed that Sherrar was reaching for a gun in his pocket. I wouldn't necessarily expect the officer to be simply standing and firing without trying to move to a position of better safety. What did Guerrero say about that? He claimed he was standing still and didn't move. That's what his testimony is. So he said he shot all from the same place. And he said he shot all from the same place. So your point about this trajectory evidence is that it shows that, it tends to show that he wasn't in a position where he could have been reaching for his pocket, basically. Correct. The other thing I want to point out, and this is very important. That's your point? He couldn't have been reaching for his pocket? My point is that the evidence, that there's contrary evidence that he wasn't, that he didn't threaten Officer Guerrero. And again, I don't mean to be interrupting you, but I think you answered yes to Judge Canelli's question. That's a very different question, so maybe you misheard it. No, I believe the answer was he was in a different position, and so the story he is giving about reaching into his pocket, if you're standing still and you're firing, how do you get a bullet wound that comes from 6 o'clock if the body is lying prone? You'd have to be in a fetal position. But I really, I need, I'm sorry, it's very important that I respond to this idea that my colleague has raised too, that you have to view this from the officer's perspective only. That was addressed in footnote 3 in Cruz. That's not the case in a sole survivor case. We're very aware of that. That's why I asked immediately, isn't this a Cruz situation? That's why we're looking at all of this evidence. You've got that point. All right, and so all I'm trying to say is there are a host of inconsistencies. The evidence that we have is that he told his mom he would call her right back, and he was planning for the next day. He's asked for an ambulance. He's got defensive wounds on his hands. That's inconsistent with being asked to be killed. Officer Johnson actually reports... He didn't ask for the ambulance. The officer asked, are you injured, and then he radioed for an ambulance. That's incorrect. He asked, do you want an ambulance, and Mr. Shire said yes. That is in Officer Guerrero's deposition. In addition, Officer Johnson reports hearing him say, stop, and I'm sorry. That's in Officer Johnson's report. That's CHP 0651. He absolutely asked for it. He answered affirmatively when he wanted an ambulance. Those are facts that are inconsistent with someone saying, please kill me. Please shoot me. The officer claims he reached into his pocket. The autopsy shows that he's got defensive wounds. As Judge Bernil said, that's inconsistent with being able to put your hands up. Why? He was reaching with one hand in the testimony. Okay, so he's reaching with one hand. With his other hand. It doesn't make a lot of sense if you're putting your hands up, yet you're reaching into your pocket. One hand. It's one hand, counsel. Well, it says he's only got injuries to one hand. Right. But that doesn't necessarily mean he didn't have his hands up, and if that's a defensive movement, I don't know that you put one hand up as a defensive movement. Well, opposing counsel's argument is, I don't have a dog in this. I'm trying to get to your response. And opposing counsel's argument is that Officer Guerrero reported that this individual asked to be shot, and then in the course of the, I think there were five shots, may have reflexively put up his hand. What is your response to that? Officer Guerrero claims that he saw his hands. Officer Guerrero's story changes. Because that's the other thing. There's inconsistencies, and then there's internally. I thought Perez said when he arrived there, the hand was underneath the body. Right. The story changes. Officer Guerrero at one point says the hand went into the pocket when he started shooting. At another point in his deposition, Officer Guerrero says, I saw the hands the entire time I was shooting. He actually says the entire time at page 58. And at 55, he says the hand went into the pocket, and it didn't come out until he was done shooting at page 56. His story is internally inconsistent there. Was it the left hand that was still under the body when Perez arrived? When Perez arrived, Perez said that Robert was in a fetal position with both hands underneath him. He couldn't see any of his hands, which, by the way, is also inconsistent with the story that Guerrero tells. But counsel, once Perez arrives, it's over. So it really wouldn't be reasonable to expect the body wouldn't have moved at all while this was happening. And he was still alive, right? He was still alive. The testimony of Guerrero is that the body didn't move at all. That was his testimony. I mean, I agree with you that things after the fact shouldn't necessarily matter. But it certainly undermines the credibility of the sole surviving officer when his testimony is different from other officers on the scene. Let me move you to the 14th Amendment issue. Help me with the time lapse here. I assume the radio calls were all recorded, and so we know down to the fraction of a second when each call was made. How much time elapsed between the call for the ambulance and the report that shots had been fired? One minute. All right. So the question is, within that one minute and all of this activity that we've just been talking about, is that sufficient time under our authority to establish a purpose to harm beyond the officer's claim that he fired in self-defense? I would say yes under the Porter case. Porter actually, which is the case that they point to, says that on remand what the court had to look at to determine if there was a purpose to harm was whether there was an overt threat, whether there was a warning of deadly force, the sudden escalation of the circumstances, the movement of a vehicle, and whether regulations were followed. It's the same here. We have things that were against regulations, like the Starbucks huddle. We have no movement. Let's go back to the one minute period of time that we're talking about in circumstances which are tense, rapidly evolving, and unpredictable. Explain to me what evidence you have here of purpose to harm aside from the officer firing and what he says was self-defense. A purpose to harm can be gleaned from the circumstances. It can be inferred from the circumstances. That is the only evidence that we will have that there is a purpose to harm. I can't remember the name of the case. Don't we have a case that says in circumstances similar to this where there's such a short time period that's not long enough to form a purpose to harm? I don't think so. What's your strongest argument? I agree with you. You're looking at circumstances and we have to glean. What's your strongest argument that this evidence could satisfy that required showing? The fact that the story that was told by Officer Guerrero doesn't make sense with having to make a decision in one minute. It doesn't make sense that he went up to Robert after asking for an ambulance.  Now he's asked for an ambulance. He says, why did you leave the car? What are you doing? He has a conversation with him. Then Robert suddenly turns and Officer Guerrero claims that there were 15 exchanges on each side. 10 to 15 warnings and up to 15 statements by Robert that were something in the nature of don't do it, I'm going to kill you, etc., etc. He claims that all of this went down within such a short period of time and it doesn't make a lot of sense. It doesn't make a lot of sense that within that same minute he also has time to radio in shots fired. It doesn't make sense that all that could have happened. So the answer to the question I asked earlier I think is ER 403 about the strongest evidence. This is the deposition testimony of Officer Guerrero. My first words to the man were, are you okay? He said no. Did you ask anything further of him? I asked if he needed an ambulance. What did he say? Yes. And it does seem to me to Judge Tallman's point that we have the radio evidence of that timing so that the one minute seems pretty solid. Yes. And then within a minute of at least responding yes to the question about whether he needed an ambulance, he's apparently making movements according to Officer Guerrero of wanting to be shot. I don't disagree that it's a one minute time frame. Can I ask you though, counsel, on the day of, the deposition of course is many months later. On the day of, did Officer Guerrero say, describe it this same way about whether the individual said he needed an ambulance or asked for an ambulance? He did say that. He did describe that the same way, what he didn't describe. I thought what he described, can you help me? I'll go back and check, but I thought on the day of that he asked the decedent whether he was hurt and he said yes. Yes. And he was, or he was bleeding because he had just been in a car accident. Yes. And then the Officer Guerrero made the decision to call for an ambulance as opposed to asking the individual whether he needed one. That's how I read it. My recollection is, and I'm definitely going from his deposition testimony on this, but on the day of my recollection was that he did ask if he wanted an ambulance. Okay. Because from the deposition testimony, this seems to me to be your strongest point, that within one minute, that is inconsistent right there that he's asking for, he, the decedent, is asking for an ambulance and then asking to be shot within one minute. I just, I'm not sure that's the way it played out on the day of, but I can go back and check. The only other thing I would also mention, you know, you talk about inconsistencies, you know, you say that Officer Guerrero says that Robert reached into his hand and he said something like, you're dead. If you look at what he said on the day of, he makes statements like, Robert, quote, looks at me like I'm going to fucking kill you, pardon me. Or he says, and then he goes on to say, he talks about, quote, that look. And that's at CHP 0797 and CHP 799. And my point is, he made statements that suggested he acted based, he shot his gun when he put his hand into his pocket allegedly based upon a look and that according to those statements on the day of, he didn't even say anything. But then what happens is Detective Marshall, who's very apologetic throughout the whole interview, that I'm sorry we have to ask you the tough questions, says, well, is that what he said? And then he backs up his story and says, yeah, okay, yeah, that's what he said. Those were his words. So his own actual words in describing it weren't the same as what he described later on. I see my time is up. Okay. Thank you very, very much. Thank you, counsel. Mr. Chick, I'll give you a couple minutes. Thank you, Your Honor. I think it's exhibit record 827 is Officer Grower's interview. And what he said is 827? Yes, Your Honor. Is that day of? That's the day of. That is the day of, yes, Your Honor. And I asked him if he was hurt, and he said, yeah, I'm hurt. Okay, I'll, whatever that means, I'll get an ambulance going for you. That's what he explained at his interview. It's a little different. It's a little different, yes, Your Honor. Okay. Turning to the 14th Amendment issue, I think it's more than just the officer's story can be a question. I think under Gonzales, there actually has to be evidence of an ulterior motive. And what we don't have in this case is what is the ulterior motive? As much as it may not make sense that Mr. Shire, within one minute, is saying he's hurt and then asking to be killed, he's also acting very erratically and doing all sorts of strange things. What's the explanation for why Officer Guerrero is going from summoning an ambulance to shooting a man? I agree with you. I think that's a very strong point. But there are a lot of other points that undercut his story. That's the problem here. And I think that is more applicable with the Fourth Amendment analysis, Your Honor. I think for the 14th Amendment. And then on the 14th Amendment. We actually need to know what his purpose is. And this is where the construct for summary judgment is. Plaintiffs have to have a version of events. Then we look. Is that a violation of clearly established law? Is it supported by the record? And that's the part that I think is missing. What is the version of events? What's his purpose? I heard your opponent say we basically have to sort of piece it together circumstantially and infer from all these things that happened afterwards and the inconsistencies and so on that he must have acted with evil motive to punish or harm as opposed to self-defense. Or he could have been scared. I think in Gonzales they said an officer can still act unreasonably in using force. But the evidence can still be lacking that it's actually outside of the construct of acting in a law enforcement purpose, even unreasonably. Okay. And then I didn't get a chance to address the trajectories of the inconsistency. What the coroner said is that if Officer Guerrero or Mr. Sherrar moves in her quote at all, that can explain the inconsistency. But Guerrero said he didn't move, right? What he remembers about actually shooting, Your Honor, is actually not a lot. He thinks maybe he shot once. So he's not moving in his version. But because the coroner says if Mr. Sherrar moves at all, that would explain it. That's our explanation. As he's being shot five times, if he were to tuck into a fetal position. That's right, Your Honor. And that one trajectory is below the waist, so it's easier to move your legs in relation to your torso. Now, different trajectories in a torso, that might be a different issue. All right. Thank you very much. Thank you, Your Honor. The case just argued is submitted. We'll give you an answer as soon as we can. I would like to express condolences to the family.
judges: Tallman, Christen, Kennelly